22-3121 United States v. Iam. Thank you. I'm Paul McCausland from Wichita. I represent Nana Amarte Baidoobonso-Iam, who for the sake of brevity we would refer to in the district court as Nana, I am, or just plain Nana. I will probably say Nana because that's what I'm used to saying. We could go with defendant. This case, this appeal involves two issues. One has to do with the jury instruction, one has to do with the exclusion of the defendant's expert, but the issues are intertwined because they both go to really the issue of what Nana's intent was when he filed an involuntary petition in bankruptcy and on page 3 under part 11 allegations he checked a box that said the debtor is generally not paying such debtors debts as they become due unless they are the subject of a bona fide dispute as to liability or amount. But didn't your client concede and state that he knew that statement was false? Not, he did not. Not exactly? No, he didn't. He did not exactly ever say that. What he said was that he, and you have to remember we're dealing with Nana, who is not an attorney, who's mostly self-educated and who understands things as a layman, believing that he has a dispute with the debtor, Mr. Wolf, which in his mind satisfied checking the box. He didn't, he did not have an intent to defraud because he thought he had a claim in dispute. The claim being a claim for wrongful foreclosure under California law. But wouldn't his intent argument be satisfied with the good faith instruction that was given? We didn't give good faith instruction, Your Honor. We I weighed the argument about the good faith instruction as pointed out by my able opponent at the time of the trial. And I raised it initially in the appeal because frankly, it was a big record and I'd forgotten that. But the issue really is about the wrongful foreclosure instruction, which would have explained to the jury California law as it applied to this type of case. And the court gave an instruction on California foreclosure law. In this case, it was a non-judicial foreclosure, something in Kansas we're totally unfamiliar with. And also gave an instruction about how bankruptcy works procedurally. But he did not give the instruction about the claim that is in Nana's mind. Why isn't that implicitly conveyed to the jury in the intent instructions on both the mail fraud count and the false statement count? They had to find a specific intent to defraud on the mail fraud count and they had to find that he knew the declaration or intent. But he testified he did act in good faith and he explained it through. That's not what I'm asking. I understand. Yeah. Yeah. I mean, and he had an opportunity to testify acting in good faith and that goes specifically to intent, which the jury was instructed on, is my point. Correct. This is sort of like the discussion I had with the judge who tried the case. He and I are good friends. So, you know, and we had this discussion. My point always was that a jury knows, in theory at least, nothing about foreclosure, certainly nothing about non-judicial foreclosure. And they know nothing about wrongful foreclosure as a civil claim, which was what Nana attempted to do. How unartful it was. Whether it was subject to dismissal, which it was dismissed, whether he might even have been subject to sanctions for not doing it the right way legally, something that everybody in this courtroom, everyone on this panel knows, in his mind he was making a claim against the attorney who brought the non-judicial foreclosure for damages. And he didn't just do it out of the blue. He had sent a demand through. Didn't he sue Wolf in California? I'm sorry, what? Did he not sue Mr. Wolf in California? Not for this claim. What he attempted to do in California is he filed a petition in federal court before the foreclosure was carried out and attempted to stop the foreclosure. And Mr. Wolf and the attorney said that claim was dismissed. But he did not assert a wrongful foreclosure claim. As the record points out in this testimony. Why didn't he sue him for wrongful foreclosure? Instead we have a bankruptcy petition in Wichita? Well, that seems like an odd geographical switch. Of course it does. And he was going to be working on developing in Kansas near Hillsboro. In fact, the petition was mailed through Hillsboro and he decided to bring this claim in Kansas because he would be here physically and he could prosecute it while he was here. That was his testimony. And so there are so many confusing things about this case. It took us four days to try it. Well, your focus, I think, is on the false statement charge, right? It is. But you're saying he did not intend to make a false statement concerning what? I mean, he did not intend to make a fraudulent statement when he checked the box or put down the charge. He made false statements about giving his friend, Gonzales, $250,000. All of those claims that are in there in the bankruptcy form were false. And he admits that those monies and owed monies did not exist. His interest in this was sort of like a contingent fee. He was doing all these things for her from the beginning to try and save her property. But you concede those statements were false? Well, I would concede they're not true. I'm not going to concede in his mind that he was giving false statements because he explained and he had sent documents to Mr. Wolfe before even the federal suit in California explaining his numbers and the damages he had. And the only thing he didn't do is he didn't do it in the correct form with the correct type of proceeding. Sure, it should have been filed with a civil action in California. And we can see that. But that doesn't mean that he was doing something fraudulent. And the reason we needed that instruction was to explain that as a matter of law in California, this isn't made up. This is something that's really true. By the same token, we needed the testimony of Lawrence Asuncion as an expert, not to testify about what NANA thought or what NANA intended to do, but to testify about this complex, complicated, and drawn out securitization process. This was a deed of trust, not a mortgage. It's also something not common in Kansas, but they're out there. They fund these loans. Well, you can appreciate the district court's concern here that you end up with a trial within a trial. If you go off on this dogleg that involves nonjudicial foreclosure that, as you said, most of us don't use or follow, but many states do, wouldn't that be confusing to the jury? And that's really not an issue that's before them. Was this foreclosure justified? Was it according to California law? That's irrelevant to this charge, isn't it? It's not irrelevant to his state of mind. It's his intent that determines whether he committed fraud. Did he have a fraudulent intent? If he had a basis to believe he had the claim, wrongful foreclosure, under California law, and then he pursues it, that's not fraudulent. Maybe he didn't, again, he didn't do it the right way. He should have filed a civil action in California. I agree. But his defense theory is, I didn't intend to defraud. I intended to assert a claim. And he shouldn't go to prison for not doing a good lawyer job when the issue isn't whether he did it the way we would have done it. It's whether he did it with intent to defraud. That's why we needed the testimony of Mr. Ascension, because he explains this complex real estate transaction. And he does these all the time. If you look in the briefs, he performs this analysis of a securitization transaction, which goes from multiple parties to get down to the trustee before it goes to foreclosure. Didn't the district court here very carefully walk through Rule 702 and reject the presentation of this expert for many good reasons, like his education, his employment background, no license to conduct forensic exams, and that he was really opining on a legal issue? Or in all those, even just one of those would be a good reason. Well, his credentials and those things were good. And they're covered in my brief at page 15. What were his credentials? Oh, he had legal opinions, which is what the district court focused on. Well, he was rendering legal opinions, or he was proposing that he do so. Yeah, many of those legal opinions were not the subject of his proposed testimony. His testimony was to say, I've looked at this transaction. There's a break in the chain of title. And basically, that's it. That is covered, like I say again, on page 15 of my brief. I talk about the record. And this man had been doing mortgage analysis on securitizations. He'd been concentrating on it for seven years. He had started doing due diligence on mortgage-backed securities that were sold as certificates. That's what we have here. When he worked for Mass. Mutual, where he started in 1991, he did these analysis, like this book. This was what, this has his opinion in the documents. He had done that for lawyers and clients to tell them whether they had a good chain of title before they would purchase property. He had the credentials to talk about those things. I think a layman can tell us whether or not all of the documents have been filed that are required in a prospectus that sets up the pooling agreement for real estate. And he did that. We had a transaction that starts on August 1 of 2005, where there's a deed of trust. And under the prospectus, it's supposed to be authorized by the end of September of that year, and nothing was filed. Nothing was filed until August of 2011, and that was too late. That was the first break of title in the chain of title right there. So that was important. Didn't the district court have an alternative ground for disallowing the expert, and that was relevance? Did you preserve that? It didn't look like you appealed that alternative ruling. Well, what I did, we had the hearing. We had the order. And at the trial, we switched judges for reasons that you don't need to know. It was a conflict that arose. We switched judges a week before trial. Judge Milgren heard the case. At the end of my evidence, I proffered that expert opinion, the entire opinion, and all of the documents, all of the evidence that we presented in a nearly afternoon-long dobber hearing. So I think we preserved it well. Did the court have any evidence? Did you appeal it? There could be a wrongful foreclosure claim in this case, but, of course, they didn't express any opinion about that, and that's what Mr. Sunstein would have done. It would have given tremendous credibility to the testimony of Nana Iyam, and it could have made the difference in the outcome of this case. Thank you, counsel. Let's hear from the United States. Good morning, Your Honors. James Brown for the United States. Your Honors, this case is about a defendant who lied and intended fraud when he stated in the involuntary petition that Mr. Wolfe owed him and Ms. Gonzalez $2.1 million and that Mr. Wolfe was not paying his debts. As Judge Briscoe has already pointed out, the defendant testified at the trial that he did not owe, that Mr. Wolfe did not owe him any money. On Record Volume 3, page 545, the defendant said, quote, I agree that he does not owe me the money. I agree that he does not owe me the money. Ms. Gonzalez further testified that she never told the defendant that Mr. Wolfe owed her any money. The defendant knew when he made the statement, the debtor is not paying such debtors debts as they become due, that Mr. Wolfe had no debts to pay and no debts were due. What this case comes down to is basically a deflection, an irrelevancy. The irrelevancy is whether or not Mr. Iam or the defendant had a property claim, a valid property claim against Mr. Wolfe for foreclosing on Ms. Gonzalez's property in California. As the district court found, that had nothing to do with the facts of this case. It was completely irrelevant to this case. And on those grounds, the court denied the instruction that Mr. McAulson says the court should have given instruction number 8 and also found that Mr. Sunstein's testimony should not be permitted because it was irrelevant because it bore on an irrelevancy in the case. That is whether there was a property dispute. It had nothing to do with the case. The only thing that mattered in this case was the defendant's statement that the debtor is generally not paying such debtors debts as they become due. He knew that was false. We're done on counts 1 and 2. So let's talk about what it seems like his wrongful foreclosure claim is kind of all he's got based on his theory of the case, which is that I sincerely believe there was a break in the chain of title and that gave me some right to make a claim here. And the instruction that was given about California law really doesn't get to the heart of whether the assignment to the Wolf Law Firm was void or voidable. And that's kind of his theory of defense instruction. It seems to me that he's got some plausible claim that that ought to be a part of the case. Well, Your Honor, before we get to whether or not the district court abused its discretion in refusing to give the instruction, I'd like to talk about the issue of waiver because we think the issue is waived. Can you answer my question? I can, yes, and I'll do that first instead of second. Your Honor, the Bedford case says that a defendant is entitled to a theory of defense instruction if he, quote, has offered sufficient evidence for the jury to find in his favor. Here, defendant offered no evidence for the jury to find in his favor. Just assuming or positing that the defendant has a valid foreclosure claim, that had nothing to do with the case. That was not evidence that would allow the jury to find in his favor. The Chavez case says that in a mail fraud case like this, the evidence must have the capacity to rebut all evidence of false and misleading conduct. Just even if the defendant had a valid claim against Mr. Wolf for wrongful foreclosure, that would have nothing to do with this mail fraud case and it would not have the capacity to rebut all evidence of false and misleading conduct. So he was not entitled to that theory of defense instruction. Even so, even if he was entitled to that, as Judge Moritz pointed out, the instructions the district court gave adequately encompassed his theory of defense. Instruction number one and instruction number two basically told the jury that the defendant could not be convicted if they found that he did not make a knowingly false statement and did not have the intent to defraud. Under the Boling case, this court has said that those instructions are adequate and a separate good faith instruction need not be given if the instructions are adequate. But what he was trying to do, and I appreciate what you're saying about the intent instructions definitely there, but he was trying to explain his intent. That is, I didn't have the intent because. He explained his intent, that's true, and he explained that intent to the jury and the court instructed the jury, hey, if you accept the defendant's explanation of his intent, you can't find him guilty. That's what the knowingly instruction basically said. But he's wanting this additional instruction that would flesh out why he did what he did and why he didn't have the specific intent that's required by this charge. That was not, our argument proceeds from the premise that that was not relevant to his intent. That was not relevant to his intent. That's what the district court found. The only thing, the only issue for the court and for the jury to decide was whether or not when he said the debtor is generally not paying such debtor's debts as they become due, that was a true statement. And whether he intended to defraud by that statement and whether that statement was knowingly false for counts one and two respectively. Whether or not he thought he had a valid claim in California and that went to his intent, that was irrelevant to his intent. That is what the district court found. That's what we argued below. And I think if you look at the trial record, that's what is clear, at least to us. Even so, we think that the defendant has waived the district court's refusal to give the instruction. We argued this in our brief. The defendant told the court that if you give the knowingly instruction, I don't need the good faith instruction. That's a waiver by abandonment. That's waiver by invited error. That waiver also did encompass instruction number eight. In his reply brief, defendant says, well, that doesn't cover instruction number eight. We'd ask the court to look at pages, record volume three, page 615 to 619. Do that again, record volume what? Record volume three, pages 615 to 619. And the defendant presented three good faith instructions, seven, eight, and nine. And he argued them as a package. And those pages will show that he argued those as a package. He was referencing the theory of defense under the even over case to the district court in those pages. And then on page 619, the defendant says, OK, if you give the knowingly instruction, I don't need the good faith instruction. This is after talking about all three of the instructions as a package. That's why it's not preserved for the defendant. And then that sort of- Is that invited error? It is invited error. We've argued that it's waiver by abandonment and it's waiver by invited error. Further, we'd ask the court to look at page 33 of the defendant's brief. And this is the only declarative statement offering a description of the district court's error, that we can find at least. And it says, the court's refusal to give the instruction on good faith denied I.M. the opportunity to present his defense to the jury. So that doesn't separate out instruction number eight from instruction seven and nine. It just refers to one instruction. That's the only declarative statement we can find in the brief describing the district court's error. We just assumed that covers seven, eight, and nine. The brief is not clear that he's saying the court erred on seven, the court erred on eight, the court erred on nine. It's not there. The briefing is just a little bit fuzzy and hazy on that point. Well, is it important here that we focus on what false statement is at issue? Yes. Because when you get into this foreclosure argument, is that really the false statement that's at issue? The false statement at issue is the defendant's statement that the debtor is generally not paying such debtor's debts as they become due. That is the gate that allowed him to get into the involuntary bankruptcy court, right? That by means of that statement, which was not true, that allowed the debtor. Which has nothing to do with nonjudicial foreclosure. Correct. Absolutely nothing. That's my point. Right. That's the government's point as well. And then if we could move to issue two. If the court doesn't have any more questions on issue one, I'll move to issue two at this time. On issue two, we think there's also a waiver. Now, as Judge Timkovich referred to in the conversation with Mr. McCausland, the defendant did make a waiver. However, the court found that Mr. Asuncion's testimony should be excluded under Rule 403 because of confusion and undue delay. The defendant does not challenge that finding on appeal. He does not discuss that finding. That finding is an alternatively sufficient ground to affirm the district court's ruling denying that evidence. And on that basis alone, this court can affirm the district court on issue two. Number two. He's also waived the argument under Rule 702. The district court found that Mr. Asuncion's testimony was not reliable and it was not relevant. The defendant does not tailor his arguments to the abuse of discretion standard of review. He doesn't identify any piece of reasoning, any statement as clearly erroneous, any erroneous ruling of law, that under the abuse of discretion standard and failure to tailor your arguments to the relevant standard of review waives the argument. Number three. The district court did not abuse its discretion even if we get past the waiver arguments. The district court, as Judge Briscoe pointed out, set forth some exhaustive findings. They're on page 33 of my brief. There's a huge bullet list of the district court's findings. They're exhaustive. They're thorough. The district court went through everything. The defendant doesn't come up with anything to substantiate an abuse of discretion. Although he has a different view of what the evidence showed and offers another view of the evidence, that's not the same as showing that the district court abused its discretion in making the finding that it did. And on this record, there's just simply no argument out there that the district court abused its discretion in denying that expert testimony. And finally, of course, the error was harmless. The error was harmless because we go back to the defendant's statement. I agree that he does not owe me the money. Record volume three, page 545. That is overwhelming and uncontroverted evidence. It's also uncontroverted that Ms. Gonzalez did not tell the defendant that Mr. Wolfe owed her any money. And so that makes the defendant's statements on the vacancy form false. That's overwhelming evidence. So even if there was some error, he still can't get past that overwhelming evidence. It's also harmless for another reason that we've already talked about, and that is that the instructions adequately convey the law, and they adequately encompass defendant's good faith defense. Because they instructed the jury that he could not be found guilty unless they found he intended to fraud, and knowingly made a false statement. And those instructions under the bowling case are adequate, because those instructions were given, no separate good faith instruction was required. That's under the bowling case. So, Your Honor, those are all the comments I have for the court today. And I yield the remainder of my time if the panel doesn't have any more questions. Thank you, Counselor. I appreciate it. Counselor, excuse in the case is submitted.